IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM ROBERT BILL,<br><br>              Plaintiff,<br>v.<br><br>TROOPER VICTOR J. STERNBY,<br><br>              Defendants. | C.A. No. 05-154 Erie<br>District Judge McLaughlin |

**MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

**I.   BACKGROUND**

Plaintiff, William Robert Bill, filed the instant complaint against several defendants under, *inter alia*, 42 U.S.C. § 1983 and the Pennsylvania Constitution. On August 24, 2005, this Court granted a motion to dismiss several parties and claims, leaving only Bill's claim against Defendant, Trooper Victor J. Sternby, based upon the "state-created danger" doctrine. On May 4, 2006, Defendant Trooper Sternby filed a motion for summary judgment as to this claim. For the reasons which follow, this motion is granted.

The following facts are undisputed. On February 22, 2003, at approximately 6:00 A.M., Defendant, Trooper Victor J. Sternby, along with his partner, was dispatched to investigate a report of a truck parked on the side of a road in a snow bank. At approximately 6:23 A.M., the officers arrived at the scene and activated the video camera in their police cruiser.

As depicted in the video tape provided as Exhibit 3 to Defendant's Motion for Summary Judgment, the officers approached the vehicle at approximately 6:23:28 and found Plaintiff, William R. Bill, and another passenger, Mr. Joyce, asleep inside. Bill exits the vehicle and puts on his coat at approximately 6:23:40, after which Bill and Trooper Sternby spend several minutes speaking.

1

According to Trooper Sternby, this portion of the conversation consisted of inquiries into how Bill got there, how long he had been there, who had been driving, and a request to provide a driver's license, as well as registration and insurance cards.[1]

The video reflects that, at approximately 6:25:48, Trooper Sternby repositioned the camera towards the road in order to capture the field sobriety tests he was about to administer.  For approximately 4 minutes, the parties are outside of the view of the camera.  Trooper Sternby avers that he spent that 4 minutes speaking to the passenger, Mr. Joyce, and that Bill did not leave the immediate area during that time.

At approximately 6:30:23, the parties walk into the road, reappearing on the camera.  For approximately 2 minutes, Trooper Sternby is seen speaking with Bill, shining his flashlight, and demonstrating for Bill how to perform the various field sobriety tests.  Bill does not attempt to perform any of the field sobriety tests.

At 6:32:36, Trooper Sternby and Bill start walking towards the front of the patrol car.  They appear to be no more than 3 feet apart as they are walking, with Trooper Sternby slightly in front of Bill.  Upon reaching the vehicle, Trooper Sternby points his flashlight at the spot near the front of the vehicle where he wished Bill to stand.  At approximately 6:32:50, as Trooper Sternby is stepping away from the front of the vehicle, Bill suddenly falls down, striking his head on the pavement in front of the vehicle.

Throughout the encounter, up until that point, Bill had been able to walk and stand under his own power, without the help of Trooper Sternby.  The video depicts Bill exiting his vehicle and putting on his coat without difficulty, and Bill, although moving slowly and with some hesitation, does not appear to sway or stumble during any of the encounters or movements depicted in the video tape prior to the fall.  Trooper Sternby remained within a 3 or 4 feet radius of Bill during all times when Bill was walking or standing without a vehicle to lean upon for support.

---

[1] Bill claims to have no recollection of any of the events that occurred during the encounter.

Following Bill's fall, an ambulance was called and Bill was taken for medical treatment. A blood sample drawn from Bill at approximately 7:35 A.M. reflected a Blood Alcohol Level of 0.25.

## II. STANDARD FOR REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. ANALYSIS

Plaintiff claim is that Trooper Sternby acted with deliberate indifference to Plaintiff's safety when he required him to undergo field sobriety tests and stand without assistance throughout the February 22, 2003 encounter. Plaintiff's claim is predicated upon the state-created danger theory under the substantive due process component of the Fourteenth Amendment to the United States Constitution.

Generally, the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens from private violence. See Kaucher v. County of Bucks, 455 F.3d 418, 431 (3rd

3

Cir. 2006). However, under the state created danger doctrine, the state may assume responsibility for the safety of an individual for whom it affirmatively creates or enhances a risk of danger. Kneipp v. Tedder, 95 F.3d 1199, 1208 (3rd Cir. 1996). To prevail upon a state-created danger claim, the Third Circuit requires that the following four elements be satisfied:

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) the state actor acted in willful disregard for the safety of the plaintiff;
> (3) there existed some relationship between the state and the plaintiff; [and]
> (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the [harm to have occurred].

Kamara v. Attorney General of the United States, 420 F.3d 202 (3rd Cir. 2005); see also Bright v. Westmoreland County, 443 F.3d 276, 281 (3rd Cir. 2006). Defendant primarily contends that he is entitled to summary judgment because Plaintiff cannot satisfy the second element of a state-created danger claim.

The United States Supreme Court has established that violations of substantive due process occur only where state action shocks the conscience. Rochin v. California, 342 U.S. 165, 172-73 (1952). According to the Third Circuit, "conscience-shocking" conduct necessitates a showing of "purpose to cause harm" in the context of split-second official decisions, while a showing of deliberate indifference may suffice in "the custodial situation of a prison, where forethought about an inmate's welfare is possible." Smith v. Marasco (Marasco I), 318 F.3d 497, 508-09 (3rd Cir. 2003) (citing Miller v. City of Philadelphia, 174 F.3d 368, 375-76 (3rd Cir. 1999)).

For cases falling somewhere in between these two extremes, a defendant's conduct must exhibit "a level of gross negligence or arbitrariness" in order to satisfy the "shock the conscience" standard in a state created danger case. Id. Here, the Court finds (and the parties agree) that the nature of the case is such that an application of the midlevel standard is appropriate. (Transcript, Hearing on Motion for Summary Judgment, 6/29/06, p. 3). That is, whether the defendant's conduct

was so grossly negligent or arbitrary as to shock the conscience. A brief review of the state-created danger jurisprudence in this circuit is appropriate.

In Kneipp v. Tedder, police stopped a husband and wife for creating a disturbance alongside a highway, concluded, upon questioning, that each was intoxicated, and then allowed the husband to head home alone while they continued to question the wife. Kneipp, 95 F.3d at 1208. After the concluded their questioning, the police sent the wife home unescorted and on foot, despite her intoxication, and despite extremely cold weather. During her walk home, the wife fell and suffered an injury that ultimately resulted in her death. The Third Circuit held that a material factual issue existed as to whether the police officer, by sending her home alone in an impaired condition, had demonstrated willful disregard for her safety. Id.

In Marasco I, the plaintiff was a former police officer and Vietnam veteran known to suffer from various medical problems, including coronary heart disease and post-traumatic stress disorder. After receiving a complaint from a neighbor, police showed up at the plaintiff's home but received no response upon knocking and calling out. While searching the outside of the house, an officer noticed a small red light on another officer's body, causing him to believe that the plaintiff might be using a laser-sighted firearm from a hidden location in the house. The officers responded by calling for backup, attempting to communicate with Smith via public address system, and activating a Special Emergency Response Team (SERT).

At least 30 SERT members arrived in full riot gear, sharpshooters were positioned, and a helicopter arrived to hover over the house. Rejecting offers from friends and family to attempt to communicate with the plaintiff, police entered the house after utilizing tear gas and other distraction devices but failed to find anyone. Plaintiff's body was later found nearby, and a forensic pathologist concluded that he had likely suffered a fatal heart attack on the night of the incident as a result of the stress created by the situation.

The Third Circuit held that factual issues precluded summary judgment, particularly on the "conscience-shocking" element of plaintiff's state created danger claim. The Court found that the

facts presented, along with expert testimony that the officers' response fell significantly below accepted professional standards, would have allowed a reasonable jury to conclude that the officer's decision to activate a SERT unit and force entry into the home shocked the conscience.

Unlike the facts presented in Kneipp and Marasco I, however, the record here does not support a finding that Trooper Sternby acted with willful disregard for the plaintiff's state of intoxication.  Sternby responded to a routine call and found Plaintiff asleep in a vehicle at the side of the road next to a snowbank.  After waking Plaintiff, Sternby observed Plaintiff exit the vehicle and put his coat on without difficulty.  As demonstrated by the video tape, Plaintiff was able to remain standing under his own power, gesture towards his vehicle, and walk short distances, all without swaying or stumbling.  While recognizing that Plaintiff was likely intoxicated, Trooper Sternby did not feel that Plaintiff's condition required support or special attention.  Indeed, Sternby testified that, in a career spanning 15 years and over 200 DUI arrests, he had never seen a person suddenly pass out and fall over without attempting to catch themselves.   Nonetheless, Sternby remained attentive to Plaintiff, staying within a very short distance to him - no more than 3 or 4 feet away, as demonstrated by the video - throughout the entire incident.  (Motion for Summary Judgement, Exhibit 1, Sternby Deposition pp. 21-22; 54).  Unlike the decedent in Kneipp, Plaintiff was never left alone or abandoned by the officer.

Plaintiff argues that Trooper Sternby should have taken additional precautions to protect Plaintiff, such as holding onto his arm to assist him in walking and seating him immediately in the police cruiser without attempting to conduct the full panoply of field sobriety tests.[2]   Plaintiff

---

[2]   Plaintiff contends that Trooper Sternby owed him a constitutional duty to have done nothing short of immediately escorting him to the police cruiser and placing him in the back of it.  At oral argument, however, Plaintiff's counsel conceded the practical effect of such a holding:

   The Court:   If you're right, from a constitutional sense about this particular fact scenario, wouldn't I potentially be creating a situation where every state trooper who makes a DUI stop
(continued...)

admits, through his counsel, that "the tape doesn't show [Plaintiff] staggering all over the place and falling." (Transcript, p. 19). Indeed, the passenger in the vehicle, to whom Trooper Sternby did offer physical assistance, "appeared to be less stable on his feet" than Plaintiff. Id. Trooper Sternby stated during his deposition that, although Bill appeared to be unsure of his footing at times, his behavior displayed nothing extraordinary, such as stumbling, tripping, or swaying. (Sternby Deposition, pp. 39-40, 54-55). The video of the encounter confirms the accuracy of Trooper Sternby's testimony as to Plaintiff's physical condition.

In short, the undisputed facts and the video evidence demonstrate that Trooper Sternby remained attentive to Plaintiff and never was more than a few feet from him. Plaintiff's own conduct undermines his claim that Trooper Sternby's failure to have immediately placed him in his police cruiser represented conscious shocking behavior.

### IV.   CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is granted and Judgment is entered in favor of the Defendant and against the Plaintiff.

---

²(...continued)
is going to tiptoe around the issue, be afraid to do anything other than put someone, who they believe to be intoxicated, immediately in the back of their trooper car without any meaningful ability to exercise the type of discretion on the scene that people expect?

Counsel:   The answer to that question is probably yes.

(Transcript, pp. 17-18).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM ROBERT BILL, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> TROOPER VICTOR J. STERNBY, ) <br> ) <br> ) <br> Defendants. ) | C.A. No. 05-154 Erie <br> District Judge McLaughlin |

## ORDER

AND NOW, this 29th day of November, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant, Trooper Victor J. Sternby, is GRANTED. This action is DISMISSED.


/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___